IN THE UNITED STATES DISTRICT COURT
<u>FOR THE DISTRICT OF MARYLAND</u>

EDWARD B. VILLARAS,
Plaintiff,

Civil No. JFM 08-2859

v.

TIMOTHY F. GEITHNER, SECRETARY, UNITED
STATES DEPARTMENT OF TREASURY,
Defendant.


<u>**MEMORANDUM**</u>


Plaintiff Edward B. Villaras, a white male who was fifty years old at the time of filing, brings this employment discrimination action against defendant, Timothy F. Geithner, Secretary of the United States Department of Treasury ("Agency"), alleging race discrimination, sex discrimination, and age discrimination, under Title VII, 42 U.S.C. § 2000e, *et seq.*, and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq.,* and retaliation on the basis of his Equal Employment Opportunity Commission ("EEOC") complaint in violation of Title VII. (First Am. Compl. ¶¶ 81-196.)[1]

Defendant filed a motion to dismiss or, alternatively, for summary judgment.  Plaintiff then filed a motion in opposition, to which Defendant filed a reply brief.  Plaintiff then requested and was granted leave to file a surreply, to which Defendant again filed a response.

---

[1] Specifically, Counts I, II, and III allege discrimination by under-rating Plaintiff's performance on his 2006 Form 12450 Review on the basis of race, sex, and age respectively.  Counts IV, V, VI, and VII allege that Plaintiff's performance on his 2007 Form 12450 was underrated due to race, sex, and age discrimination and retaliation respectively.  Counts VIII, IX, X, and XI allege that Plaintiff was not issued a cash performance award based on his 2007 performance on the same four grounds.  Counts XII, XIII, XIV, and XV allege Plaintiff was under-rated on his 2008 Form 12450 Review on the same four grounds.  Counts XVI, XVII, XVIII, and XIX allege that Plaintiff was not given a discretionary award based on his 2008 summary rating on the same grounds.  Counts XX, XXI, and XXII allege that Plaintiff was under-rated on his 2006 Form 13236 Evaluation of Managerial Potential based on race, sex, and age discrimination respectively.  Counts XXIII, XXIV, XXV, and XXVI allege that Plaintiff was under-rated on his 2007 Form 13236 Evaluation of Managerial Potential based on race, sex, and age discrimination and retaliation.  Counts XXVII, XXVIII, XXIX, and XXX allege that Plaintiff was under-awarded for work on Extender Legislation and Counts XXXI, XXXII, XXXIII, and XXXIV allege that Plaintiff was under-awarded for his 2006 Training Award for these same reasons.  Finally, Counts XXXV, XXXVI, XXXVII, and XXXVIII allege harassment and abuse by Regina Marshall on the basis of race, sex, and age discrimination and retaliation.

The issues have been fully briefed and no hearing is deemed necessary. Local Rule 105.6 (D.Md. 2008). For the reasons stated below, Defendant's motion to dismiss is granted as to most claims and motion for summary judgment is granted as to the remaining claims.

I.  FACTS[2]

Plaintiff began employment with the Internal Revenue Service in 1990 as a temporary mail clerk.  He was subsequently hired on a permanent basis and received numerous promotions, ultimately culminating in his appointment as a permanent manager in September 2004. In this new position, Plaintiff handled three projects.  Additionally, he was responsible for a number of administrative tasks such as completing employee evaluations and providing employee feedback.  (First Am. Compl. ¶¶ 8-15.)

During his time as a manager, Plaintiff's first-level supervisor was Regina Marshall ("Marshall"), an African-American woman, and his second-level supervisor was Timothy Corbett ("Corbett"), a white man.  (First Am. Compl. ¶ 17; Def.'s Mot. to Dismiss at 3-4.)  Marshall was responsible for completing Plaintiff's evaluations and for overseeing his work in other ways. Plaintiff's claims are rooted in Marshall's behavior toward him and her ratings in his performance evaluations.

Plaintiff was compensated on a Pay Band scale, rather than a regular GS scale.  On a Pay Band scale, an employee receives a certain Base Salary and is then eligible for annual raises in the Base Salary based on performance evaluations.  The evaluations are comprised of two categories: Responsibilities and Commitments.  For each, the reviewer can assign one of three ratings: Not Met, Met, or Exceeded.  Based upon the ratings in the two categories, the reviewer then must assign an overall Summary Rating of either "Not Met," "Minimally Satisfactory," "Met," "Exceeded," or "Outstanding."  The overall Summary Rating determines the amount of the employee's salary increase, if any.  (Def.'s Mot. to Dismiss at 5.)

---

[2] The following facts are uncontroverted or set forth in the light most favorable to the Plaintiff.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Plaintiff's claims are based largely on Form 12450-A review ratings.  In each of the four evaluations that Plaintiff received from 2000 through 2004, Marshall rated him "Outstanding." On the 2005 form, Marshall gave Plaintiff a "Met" rating for the Responsibilities Category and an "Exceeded" rating for Commitments, reaching an overall performance rating of "Exceeded." On the 2006 Review, Marshall gave Plaintiff a "Met" rating under both Responsibilities and Commitments and a "Met" rating under Summary Evaluation.  (First Am. Compl. ¶¶ 37-39; Def.'s Mot. to Dismiss at 5.)  According to Plaintiff, Marshall supported these lower ratings by including more than a dozen false statements or illegitimate considerations.  For example, Marshall gave credit to younger minorities and women for work that was actually performed by Plaintiff. (First Am. Compl. ¶¶ 37-39.)

Defendant asserts that these ratings were justified.  Specifically, Defendant points out that Plaintiff had a project that was in Code "Yellow," meaning it was in danger of missing a deadline.  Furthermore, Marshall met with Plaintiff to discuss his usage of unscheduled sick leave, poor management of staff, failure to provide timely progress reviews, and other shortcomings.  As a result of these problems, Marshall began managing the planning and execution of Plaintiff's project.  (Def.'s Mot. to Dismiss at 7.)

Plaintiff brought his concerns to Corbett and used an appeal process to challenge Marshall's review.  The review board subsequently raised Plaintiff's Responsibilities Rating from "Met" to "Exceeded" but did not raise his Summary Evaluation Rating.  Plaintiff suggests that "in almost every instance in other peers' evaluations" a consistent formula is used to compute the Summary Evaluation Rating.  Specifically, when an individual has one "Met" rating and one "Exceeded" rating, the Summary Evaluation Rating is "Exceeded."  Plaintiff argues that the only possible explanation for the review board not raising his Summary Evaluation Rating to "Exceeded" was that it relied upon Marshall's false and misleading written review, which was rooted in race, gender, and age discrimination.  (First Am. Compl. ¶¶ 40-45.)

Plaintiff brought his concerns to an Equal Employment Opportunity ("EEO") counselor on December 19, 2006.  In his EEOC complaint, he wrote, "(A) I was treated different than peers on the staff. (B) 11/24/2006, Regina Marshall & Timothy Corbett (C) I was given a false

3

evaluation; new and unexperienced managers were shown favoritism. (D) I did not receive the award, pay increase, and the summary evaluation rating I earned to stay competitive with my peers for potential promotions." (Memo. in Support of Plaintiff's Opp. Errata, Exh. 5.)

On Februrary 23, 2007, the EEOC sent Plaintiff a letter in which the EEO investigator indicated that the EEOC would investigate:  (1) issues surrounding his 2006 Form 12450-A Review and lack of performance award; (2) Plaintiff's allegations that he was treated "different than his peers," spoken to in "negative tones both private and in public," and was "micro-managed" starting in October 2005; and (3) issues surrounding his failure to receive a detail assignment in January 2007.  (Memo. in Support of Plaintiff's Opp. Errata, Exh. 6.)  Plaintiff did not seek to amend the issues being investigated and proceeded to participate in the administrative discovery process.  Plaintiff later sought to add numerous issues, but the Administrative Law Judge ("ALJ") dismissed these claims as untimely.  (Def.'s Mot. to Dismiss, Exh. 1 at 4-5.) The ALJ issued an opinion finding no discrimination on July 22, 2008.  (*Id.* at 40.)

Plaintiff claims he experienced retaliation as a result of his EEO complaint in addition to continuing discrimination.  On his 2007 and 2008 12450-A Reviews, Marshall rated Plaintiff "Exceeded" in both categories but only gave him a Summary Evaluation Rating of "Exceeded." In the past, almost every peer who received such ratings was given a Summary Evaluation Rating of "Outstanding."  Plaintiff alleges that this under-rating is explainable only by discrimination and/or retaliation.  Furthermore, Plaintiff was denied the performance award he was told he would receive in 2007.  (First Am. Compl. ¶¶ 48-59.)  Plaintiff also was not recognized for his key role in the success of a high profile project and was awarded significantly less compensation for a 2006 Training Award. (First Am. Compl. ¶¶ 60-63.)

In addition to challenging his review ratings, Plaintiff alleges numerous instances in which Marshall's actions created a hostile work environment.  He claims Marshall subjected him to a pattern of harassment and abuse since October 2005, after she filled managerial positions similar to his own with minorities.   Plaintiff was assigned inferior team members and assigned to a historically failing project.  Marshall spoke to Plaintiff in unprofessional, abusive, negative, and demeaning tones and routinely criticized him at peer meetings.  (First Am. Compl.

¶¶ 20-30.) Plaintiff asserts that Marshall "has an undeniable and extensive history of chasing away talented white males" by treating them more harshly than minorities and females. Marshall gives preference to women and minorities in promotions and protects underperforming minorities and females by giving them easier assignments and lying on their reviews.  (First Am. Compl. ¶¶ 64-73.)

In contrast, Defendant points out that Plaintiff received the promotion to his manager position over two younger, female, African-American candidates upon Marshall's recommendation.  (Def.'s Mot. to Dismiss at 4.)  Defendant also documents that when Plaintiff went on sick leave for his cancer treatment, Marshall solicited donations of annual leave, donating forty hours of her own annual leave, so that Plaintiff's pay status could be maintained. (*Id.* at 7-8.)

## II.  STANDARDS OF REVIEW

A.  Motion to Dismiss for Lack of Jurisdiction 12(b)(1)

Motions to dismiss for failure to exhaust administrative remedies are governed by Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003), aff'd 85 Fed. App'x 960 (4th Cir. 2004).  The plaintiff bears the burden of proving that subject matter jurisdiction properly exists in the federal court. *See Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.,* 166 F.3d 642, 647 (4th Cir. 1999).  In a 12(b)(1) motion, the court "may consider evidence outside the pleadings" to help determine whether it has jurisdiction over the case before it. *Corrado v. Live Investors Owners Participation Trust and Plan*, No. DKC 2008-0015, 2009 WL 3062320, at *3 (D. Md. Sept. 21, 2009) (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). The court should grant the 12(b)(1) motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* (quoting *Richmond*, 945 F.2d at 768).

B.   Motion for Summary Judgment

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law.  In *Anderson v. Liberty Lobby, Inc.*, the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." 477 U.S. 242, 249 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.  Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in a light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd.*, 475 U.S. at 587 (quoting *United States v. Diebold, Inc.*, 369 U.S. 654 (1962)); *see also E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005).  The mere existence of a "scintilla" of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson*, 477 U.S. at 252.

This court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citation omitted).  Indeed, the court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humpreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

III.  DISCUSSION

A.   Motion to Dismiss for Lack of Jurisdiction

Defendant asserts that Plaintiff's claims with respect to Counts IV through XXXVIII—all claims other than those involving the 2006 Form 12450-A review rating—should be dismissed

6

for failure to exhaust administrative remedies because Plaintiff failed to raise these issues in his initial EEOC complaint and they were never administratively investigated.  (Def.'s Mot. to Dismiss at 2.)

Plaintiff counters that he did initiate timely contact for "some" of these claims and was not required to do so for others because they "relate back" to Plaintiff's original EEOC charge. Because the Plaintiff notified the EEO counselor of the ongoing acts of discrimination and the EEO counselor agreed to investigate them, Plaintiff argues, his obligation to formally initiate contact should be equitably tolled.  (Memo. in Support of Plaintiff's Opp. Errata at 3.)

Plaintiff's claims for Counts IV through XXXVIII essentially fall into three categories: (1) allegations of discrimination related to performance ratings and other discrete acts; (2) retaliation claims following the EEOC complaint; and (3) hostile work environment claims rooted in both discrimination and retaliation.  Each category will be analyzied separately.

*1.   Discrimination Claims*

Under 29 C.F.R. § 1614.105(a)(1), a person who believes he has been discriminated against based on race, sex, age, or other factors "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action."  Failure to comply with the time limitation mandates dismissal.  *See, e.g.*, *Zografov v. Veterans Admin. Med. Ctr.*, 779 F.2d 967, 970 (4th Cir. 1985).  "Courts strictly adhere to these time limits and rarely allow equitable tolling of limitations periods." *Khoury*, 85 Fed. App'x at 960 (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95-96 (1990)).

After initiating contact with the counselor, a plaintiff must exhaust his administrative remedies by bringing a charge with the EEOC.  *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000) (citing *King v. Seaboard Coast Line R.R. Co.*, 538 F.2d 581, 583 (4th Cir. 1976)).[3]

---

[3] The content of a plaintiff's EEOC charge defines the scope of his subsequent right to institute a civil suit. *Jones v. Calvert Group, Ltd.*, 551 F.3d 297 (4th Cir. 2009) (citing *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002); *Smith*, 202 F.3d at 247 (citing *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962-63 (4th Cir.1996)). The administrative charge does not, however, "strictly delimit" a plaintiff's federal claims.  The federal civil action

Administrative remedies must be exhausted with respect to *each* "discrete act" of alleged discrimination. *Malghan v. Evans*, 118 Fed. Appx. 731, 734 (4th Cir. 2004) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)). As explained by the Supreme Court in *Morgan*, "discrete discriminatory acts are not actionable if time barred, *even when they are related to acts alleged in timely filed charges*. Each discrete discriminatory act starts a new clock for filing charges alleging the act." 536 U.S. at 113 (emphasis added). Many courts have specifically found performance evaluations to be "discrete acts" under *Morgan*. *See, e.g.*, *Miller v. N.H. Dep't of Corr.*, 296 F.3d 18, 22 (1st Cir. 2002); *Siddiqi v. New York City Health & Hosps. Corp.*, 572 F. Supp. 2d 353, 366 (S.D.N.Y. 2008). Similarly, not receiving a performance award is also a "discrete act." *See, e.g., Blount v. Thompson*, 400 F. Supp. 2d 383, 841 (D. Md. 2004); *accord Chandler v. Bernanke*, 531 F. Supp. 2d 193, 199 (D.D.C. 2008).

Here, although Plaintiff arguably "initiate[d] contact" with an EEO counselor or similar person within forty-five days of some of the discrete occurrences involving a performance rating or performance award, he failed to exhaust the administrative remedies for those acts (other than those in Counts I-III). Informing the EEOC of additional discrete grievances without amending the initial charge is insufficient to satisfy exhaustion requirements for those added issues. *See Sloop v. Mem'l Mission Hosp., Inc.*, 198 F.3d 147, 149 (4th Cir. 1999) (finding that plaintiff's letter to EEOC attempting to add retaliation claims to an earlier-filed complaint did not constructively amend the formal charge and additional claims were therefore not exhausted); *Belyakov*, 308 Fed. App'x at 728 (finding that affidavit submitted to EEOC a few months after EEOC charge was filed did not expand the scope of a reasonable EEOC investigation and therefore did not exhaust plaintiff's claims as to the added issues). Furthermore, the added claims could not reasonably be expected to follow Plaintiff's initial charges—they are independent acts. *See, e.g.*, *Belyakov*, 308 Fed. App'x at 728 (finding an event that was a "prelude" to the discrimination alleged in the EEOC complaint to be within the reasonable scope of an investigation but finding all other acts outside the reasonable scope).

---

may include anything within "the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Belyakov v. Leavitt*, 308 Fed. App'x 720, 728 (4th Cir. 2009) (quoting *Chisholm v. U.S. Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981)).

Plaintiff's proper claims are therefore limited to those included in the formal EEOC charge. Claims that were not included in the EEOC investigation or timely brought before the ALJ are outside this Court's jurisdiction.

Because Plaintiff failed to exhaust the administrative remedies required, this Court hereby dismisses the race, sex, and age discrimination claims alleged in Counts IV-VI (pertaining to 2007 Form 12450 Review), Counts VIII-X (pertaining to Discretionary Award from 2007 Summary Rating), Counts XII-XIV (pertaining to 2008 Form 12450 Review), Counts XVI-XVIII (pertaining to Discretionary Award from 2008 Summary Rating), Counts XX-XXV (pertaining to 2006 and 2007 Form 13236), Counts XXVII-XXIX (pertaining to Work on Extender Legislation), and Counts XXXI-XXXIII (pertaining to the 2006 Training Award).

*2.   Retaliation Claims*

Title VII makes it an "unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).   Plaintiff claims the Agency retaliated against him in violation of the statute after he filed his EEOC charge in December 2006.

Defendant again points to language in *Morgan* and its progeny to argue that Plaintiff's retaliation claims should be dismissed for failure to exhaust administrative remedies. (Def.'s Mot. to Dismiss at 19.)  In *Morgan*, the Supreme Court wrote, "Each incident of discrimination *and each retaliatory adverse employment decision* constitutes a separate actionable 'unlawful employment practice.'" 536 U.S. at 114 (emphasis added).  Furthermore, courts have held that a plaintiff must exhaust each discrete claim of retaliation or the claims must be dismissed.  *See, e.g., Blount*, 400 F. Supp. 2d at 840 (finding retaliation claims, among others, time barred for failure to bring them to an EEO counselor within forty-five days); *Venkratraman v. REI Sys.*, 417 F.3d 418, 422 (4th Cir. 2005) (dismissing retaliation claims where Plaintiff never filed EEOC charge); *Sloop*, 198 F.3d at 149 (dismissing retaliation claims where initial EEOC charge was never amended to include retaliation).  These cases, however, are not on point.  In none of these cases did the plaintiff file a timely EEOC charge and *then* claim to experience retaliation *as a result of the filing*.

The retaliation claims in the instant case are more analogous to those in *Nealon v. Stone*, 958 F.2d 584 (4th Cir. 1992).  In *Nealon*, the Fourth Circuit held that a plaintiff asserting a Title VII claim of retaliation for filing an EEOC charge could raise the claim for the first time in federal court.  958 F.2d at 590.  The court reasoned that a plaintiff who had already experienced retaliation for filing a claim would "naturally be gun shy about inviting further retaliation by filing a second charge complaining about the first retaliation."  *Id.* (quoting *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1312 (7th Cir. 1989)).[4]  *Morgan* does not alter this analysis because the case "does not purport to address the extent to which an EEOC charge satisfies exhaustion requirements for claims of related*, post-charge* events." *Jones*, 551 F.3d at 303 (emphasis added) (citing *Wedow v. City of Kansas City, Mo.*, 442 F.3d 661, 673-75 (8th Cir. 2006)). *But see Martinez v. Potter*, 347 F.3d 1208, 1210-11 (10th Cir. 2003) (holding that after *Morgan* claims of discrete employment actions are not exhausted by virtue of an earlier, reasonably related EEOC charge).   Instead, *Morgan* stands for the proposition that a time-barred claim is not revived by the subsequent timely filing of a related act, which is not at issue here.

Here, Plaintiff alleges that he was retaliated against in direct response to his EEOC charge. Following *Nealon*, therefore, Plaintiff was not required to exhaust administrative remedies for his retaliation claims.  See *Jones*, 551 F.3d at 304.  Consequently, the retaliation claims (Counts VII, XI, XV, XIX, XXVI, XXX, XXXIV, XXXVI) are not dismissed for failure to exhaust administrative remedies.

*3.  Hostile Work Environment Claims*

The Supreme Court has observed that hostile environment claims are "different in kind from discrete acts."  Rather than occuring on a particular day, this unlawful practice "occurs

---

[4] Defendant also argues that *Nealon* was overruled by *Morgan*. (Def.'s Mot. to Dismiss at 20-22.)  After *Morgan*, the Fourth Circuit has taken arguably conflicting stances regarding whether *Nealon* remains good law.  In *Venkratraman*, 417 F.3d at 422, the Fourth Circuit held that *Morgan* requires exhaustion for retaliation claims, which seems inconsistent with *Nealon*.  More recently, however, the Fourth Circuit held that *Nealon* "remains binding precedent," even after *Morgan* and its progeny.  *Jones*, 551 F.3d at 303.  Defendant argues that because *Venkatraman* predates *Jones*, it must take precedence under *McMellon v. United States*, 387 F.3d 329, 333 (4th Cir. 2004) (en banc).  (Def.'s Mot. to Dismiss at 22 n.7.)  In response, Plaintiff suggests that *Venkratraman* and *Jones* are reconcilable, thus rendering both good law. (Memo. in Support of Plaintiff's Opp. Errata at 12.) Plaintiff's argument that *Venkatraman* is distinguishable from the other cases in that the plaintiff had not filed *any* EEOC charge is persuasive.  Therefore, this Court finds that *Nealon* remains applicable.

over a series of days or perhaps years." *Morgan*, 536 U.S. at 115. If at least one act contributing to the claim occurs within the filing period, "the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* at 117.

According to Plaintiff, it is undisputed that at least some hostile workforce activities occurred within the forty-five days preceding Plaintiff's EEOC complaint. For example, Plaintiff claims that Marshall "browbeat" him in public meetings each week. (Memo. in Support of Plaintiff's Opp. Errata at 6.) Defendant does not directly counter this proposition but instead challenges whether Plaintiff's hostile workforce claims are properly before this Court because the Complaint did not specifically allege a hostile work environment claim. (Reply Brief in Support of Defendant's Mot. to Dismiss at 5 n.2.)

The Counts at issue, Counts XXXV-XXXVII, allege "Harrassment and Abuse by Regina Marshall" on the basis of race, sex, age, and retaliation and state that Defendant harassed Plaintiff and treated him unfairly. (First Am. Compl. ¶¶ 185-96.) Although Plaintiff's Complaint is not a model of clarity, these Counts contain sufficient detail to properly be considered as hostile work environment claims in this Court. *See, e.g.*, *Cruz v. Coach Stores*, 202 F.3d 560, 568 (2d Cir. 2000) ("[A]lthough the complaint did not refer specifically to 'hostile work environment harassment,' it did describe the harassment [Plaintiff] experienced in enough detail to put the claim before the court."); *Sekyere v. City of New York*, No. 5 Civ. 7192, 2009 WL 773311, at *7 (S.D.N.Y. March 18, 2009) ("Although Plaintiff does not explicitly plead a hostile work enviroment claim in her Complaint . . . [g]iven that the essential elements of a hostile work environment claim appear in Plaintiff's Complaint and that both parties argue the issue of a hostile work environment in their summary judgment briefs, the Court finds consideration of the claim to be appropriate."); *Soliz v. Assocs. in Med.*, No. H-06-2785, 2007 WL 2363304 (S.D. Tex. Aug. 17, 2007) ("Though it does not appear that [Plaintiff] has pleaded a hostile work enivornment in her first amended complaint, in the interest of general pleading rules, the court will address the argument."). Plaintiff's hostile workforce claims therefore survive the motion to dismiss.

B.   Summary Judgment

Under Rule 12(b)(6), a motion to dismiss should be treated as a motion for summary judgment when the motion to dismiss, or exhibits in the record, present matters outside the nonmoving party's pleadings and the court does not exclude such matters.  Fed.R.Civ.P. 12(b)(6).  The Defendant's motion will therefore be treated as a motion for summary judgment with regard to the surviving Counts because it requires looking beyond the four corners of the complaint.  *Curry v. Maryland Correctional Institution*, No. JFM-05-1220, 2007 WL 2778660, at *5 (D. Md. Sept. 17, 2007).

Parties agree that Plaintiff properly exhausted administrative remedies for Counts I, II and III, which allege sex, race, and age discrimination in under-rating Plaintiff's performance on the 2006 Form 12450-A Review.  As discussed above, Plaintiff's retaliation and hostile work environment claims also survive the motion to dismiss for lack of jurisdiction.  These counts will be evaluated in turn.

1.   *Discrimination on 2006 Form 12450: Counts I, II, and III*

In Counts I, II, and III, Plaintiff alleges that the he was under-rated on his 2006 Form 12450 Review because of race, sex, and age discrimination.

Plaintiffs can establish a prima facie case of discrimination under Title VII or the ADEA by direct evidence or by applying the burden-shifting model set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  Here, Plaintiff has not alleged any direct evidence of discrimination, so the *McDonnell Douglas* framework is appropriate.

Under the burden-shifting scheme, Plaintiff has the initial burden to demonstrate a prima facie case.  *Brockman v. Snow*, 217 Fed. App'x 201, 204 (4th Cir. 2007).  If this burden is satisfied, Defendant then has the burden to provide a legitimate, non-discriminatory reason for the adverse employment action.  *Id.*  If Defendant is successful in this regard, the burden then shifts back to Plaintiff to demonstrate that the stated rationale was pretextual.  *Id.*  This means Plaintiff must show not only that the proffered reason was false, but also that discrimination is the real reason for the agency's action.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507-08

(1993).  Summary judgment is appropriate "where the plaintiff is either unable to establish a prima facie case or unable to rebut or show pretext in the defendant's legitimate, non-discriminatory  reasons for the challenged employment actions." *Curry*, 2007 WL 2778660 at *6 (citation omitted); *see also Kozlowski v. Hampton Sch. Bd.*, 77 Fed. App'x 133, 140 (4th Cir. 2003) ("At summary judgment, if the plaintiff has failed to produce evidence from which a reasonable fact-finder could find the existence of the four elements of the prima facie case, then the court will award judgment to the defendant.").

To establish a prima facie case for discrimination, Plaintiff must show (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was performing satisfactorily at the time of the adverse employment action; and (4) there were circumstances giving rise to an inference of discrimination. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649-50 (4th Cir.2002).  Defendant challenges Plaintiff's ability to satisfy all but the first element.  (Def.'s Mot. to Dismiss at 26.)

With regard to the second element, Defendant points out that Plaintiff must establish that the person allegedly acting pursuant to a discriminatory animus was the one "principally responsible" for, or the "actual decisionmaker" behind, the adverse employment action.  *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 288-89 (4th Cir. 2004) (en banc).  Both parties believe *Hill* supports their argument.  Defendant emphasizes that the Review Board and a higher level manager made "independent" reviews of Plaintiff's Summary Rating, thus rendering them the "actual decisionmakers." (Def.'s Mot. to Dismiss at 26-28.)   Plaintiff counters that the Review Board and other manager "merely 'rubber-stamped'" Marshall's evaluation and were prejudiced by the false statements included in Marshall's report, so Marshall remained the person "principally responsible" for Plaintiff's rating. (Memo. in Support of Plaintiff's Opp. Errata at 15-18.)  The facts in *Hill* are not sufficiently analagous to the instant matter to reach a definite conclusion regarding which party the case supports.  However, viewing the facts in the light most favorable to Plaintiff—seeing the Review Board and manager as at least somewhat influenced by Marshall's evaluation—leads this Court to find that Plaintiff sufficiently showed that he suffered an adverse employment action.  *Cf., e.g., Equal*

*Employment Opportunity Comm'n v. BCI Coca-Cola Bottling Co. of Los Angeles*, 450 F.3d 476, 485 (10th Cir. 2006) (citations omitted) (noting that plaintiffs cannot prevail where decisionmakers conduct an independent investigation of the facts, "rather than relying entirely on the recommendation of the biased subordinate"); *Collier v. Sch. Bd. of the City of Charlottesville*, No. Civ. A.3:04CV00038, 2006 WL 435478, at *5 (W.D. Va. Feb. 1, 2006) (noting that plaintiffs will fail to show this element where "there is evidence that the formal decisionmaker conducted an independent investigation into the circumstances . . . and did not just blindly adopt the subordinate's recommedations") (citing *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998)); *Oleyar v. County of Durham*, 336 F. Supp. 2d 512, 518 (M.D.N.C. 2004) (finding no basis for imputing discriminatory motive to decionmakers who conducted an "independent review").

The next element in Plaintiff's prima facie case is to show that he was "performing [his] job duties at a level that met [his] employer's legitimate expectations at the time of the adverse employment action." *Hill*, 354 F.3d at 284.  In evaluating this prong, an employee's subjective analysis of his own work performance is insufficient.  *See Martin v. Montgomery County Pub. Schs.*, 223 F. Supp. 2d 742 (D. Md. 2002); *see also Techs. Applications & Serv. Co.*, 80 F.3d at 960-62 ("It is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff.") (citation and internal quotations omitted).  An employee's own testimony cannot establish a genuine issue of fact as to whether the employer's standards were met.  *Pulley v. KPMG Consulting, Inc.*, 348 F. Supp. 2d 388, 395 (D. Md. 2004) (citing *King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003)).  Here, because the alleged adverse employment action was rating the Plaintiff at a "Met" level, rather than "Exceeds," both parties seem to agree that Plaintiff must show he deserved the "Exceeds" rating to satisfy this prong of the prima facie case.  (Def.'s Mot. to Dismiss at 28; Memo. in Support of Plaintiff's Opp. Errata at 18.)    Plaintiff fails to meet this burden.  Plaintiff does not provide any objective facts showing that he performed at the "Exceeds" level, but instead merely disputes the facts that Defendant offered as proof that Plaintiff was underperforming.  (Memo. in Support of Plaintiff's Opp. Errata at 18-21.)  Plaintiff cannot satisfy this element of his prima facie case by shifting the burden of proof to Defendant.

It was Plaintiff's obligation to show that he was performing at an "Exceeds" level, not Defendant's burden to show that he was not.

Plaintiff's argument as to the fourth prong—showing circumstances giving rise to an inference of discrimination—is minimally sufficient.  One way to demonstrate an inference of discrimination is to show that "similarly situated employees outside the protected class received more favorable treatment."  *See Cottman v. Rubin*, 35 Fed. App'x 53, 55 (4th Cir. 2002).  After exhaustively arguing that such such evidence is not necessary, Plaintiff then nevertheless attempted to prove that it exists in this case.  (Memo. in Support of Plaintiff's Opp. Errata at 22-24.)  Unfortunately, Plaintiff's attempt to show that similarly situated employees outside the protected class were treated differently is comprised of little more than observations of Marshall's seemingly neutral actions followed by conclusory arguments that only discrimination could explain her behavior.  For example, Plaintiff points out that Marshall failed to mention in the 2006 ratings forms of three African Americans that they did not act as Front Line Managers for the entire 2006 rating period.  Without further explanation, he then concludes, "This demonstrates different treatment of Plaintiff on the basis of his race." (*See, e.g.*, Memo. in Support of Plaintiff's Opp. Errata at 25.)  Although the evidence for this prong is extremely thin, it is perhaps sufficient if read generously in the light most favorable to Plaintiff. It is unnecessary to decide this point because Plaintiff failed to prove prong three and therefore did not prove a prima facie case of discrimination.

Assuming, arguendo, that Plaintiff made a prima facie case of discrimination, Plaintiff still would not survive summary judgment on these counts. Defendant easily provides a legitimate, non-discriminatory reason for the adverse employment action.  It is uncontested that Plaintiff's project fell behind schedule and that Marshall spoke to Plaintiff about his failure to manage his staff appropriately.  (Def.'s Mot. to Dismiss at 31; Memo. in Support of Plaintiff's Opp. Errata at 18.)  Although Plaintiff challenges whether these shortcomings were his fault, there is no evidence that it was unreasonable on the part of Marshall or others in the Agency to perceive these problems as reflecting negatively on Plaintiff's performance.  Moreover, "The defendant need not persuade the court that it was actually motivated by the proffered reasons," but

rather must simply raise a genuine issue of fact.  *Texas Dep't of Comty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  Defendant has amply met that burden here.  Plaintiff next has the "opportunity to demonstrate that the proffered reason was not the true reason for the employment decision" in addition to retaining the burden of "persuading the court that she has been the victim of intentional discrimination."  *Id.* at 256; *see also Mereish v. Walker*, 359 F.3d 330, 334 (4th Cir. 2004) (citing *id.*). Plaintiff has not met this burden.  Plaintiff's "own self-serving and conclusory allegations are insufficient to prevent summary judgment."  *Lofton v. Potter*, No. 5:04 CV 84 F(3), 2004 WL 3403249, at *3 (E.D.N.C. Dec. 3, 2004) (citing *Causey v. Blalog*, 162 F.3d 795, 801 (4th Cir. 1998)).  There is no persuasive objective evidence that Plaintiff's performance ratings were rooted in discrimination.  Summary judgment is therefore granted as to Counts I, II, and III.

   *2.  Retaliation Claims: Counts VII, XI, XV, XIX, XXVI, XXX, XXXIV, and XXXVI*

   Retaliation claims also follow the three-part *McDonnell Douglas* framework.  To establish a prima facie case of illegal retaliation, Plaintiff must show (1) he engaged in protected activity; (2) he was subject to an adverse employment action; and (3) a causal connection existed between the protected activity and the employment action. *King*, 328 F.3d at 150-51 (citation omitted).  The first two elements are clearly present, but Plaintiff has failed to establish the third prong.  Plaintiff's strategy is again primarily to attack Defendant's arguments, rather than presenting factual evidence supportive of the prima facie case.  To the extent Plaintiff discusses objective facts, they are not indicative of retaliation.  For example, Plaintiff emphasizes that the EEOC investigation "went on for several months, disrupting the workplace."  (Memo. in Support of Plaintiff's Opp. Errata at 47.)  The observation that the EEOC investigation was disruptive and that Plaintiff is unhappy with his treatment does not lead to the conclusion that Plaintiff suffered retaliation.  A key causal link is missing from Plaintiff's conclusion.  It is Plaintiff's burden to establish the prima facie case, and Plaintiff has not met this burden.  Therefore, the second and third steps of the *McDonnel Douglas* approach are not necessary.  The motion for summary judgment is granted as to the retaliation claims.

3.   *Hostile Work Environment Claims: Counts XXXV, XXXVI, and XXXVII*

Finally, to bring a hostile work environment claim, Plaintiff must prove that the offending conduct (1) was unwelcome; (2) was based on Plaintiff's race, sex, and/or age; (3) was "sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive work environment;" and (4) is imputable to the employer. *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 331 (4th Cir. 2003); *Baqir v. Principi*, 434 F.3d 733, 745-46 (4th Cir. 2006). Plaintiff fails prong two for the same reasons he fails to prove his other claims: there insufficient evidence for a reasonable trier of fact to conclude that the negative actions experienced by Plaintiff were rooted in discriminatory animus.  Furthermore, Plaintiff does not allege conditions severe or pervasive enough to satisfy the third prong.  Relevant factors include frequency, severity, whether the conduct is physically threatening or humiliating, whether the conduct interferes with the employee's work performance, and the effect on the employee's pschological wellbeing.  *Moret v. Geren*, 494 F. Supp. 329, 341-42 (D. Md. 2007) (citing *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993).  Here, reading the evidence in the light most favorable to the Plaintiff, Marshall treated Plaintiff "poorly" by assigning him inferior staff members and speaking to him in "unprofessional, abusive, negative, and demeaning tones." (First Am. Compl. ¶¶ 20-21, 28.)  Plaintiff does not allege any physical threat, interference with his work performance, or detriment to his psychological wellbeing (other than the vague allegation of "emotional harm").  (*E.g.*, *id.* at ¶ 196.)  The evidence does not support a claim for hostile work environment.  *See, e.g.*, *Blount*, 400 F. Supp. 2d at 843 (finding public ridicule insufficiently severe to show hostile work environment); *Curry*, 2007 WL 2778660 at *8 ("[N]ot liking or being liked by one's supervisors or co-workers does not create a viable hostile work environment claim.").  Defendant's motion for summary judgment is therefore granted.

IV. CONCLUSION

For the above-mentioned reasons, Defendant's Motion to Dismiss is granted as to Counts IV, V, VI, VIII, IX, X, XII, XIII, XIV, XVI, XVII, XVIII, XX, XXI, XXII, XXIII, XXIV, XXV, XXVII, XXVIII, XXIX, XXXI, XXXII, and XXXIII.  Defendant's Motion for Summary Judgment is granted as to Counts I, II, III, VII, XI, XV, XIX, XXVI, XXX, XXXIV, XXXV, XXXVI, XXXVII, XXXXVIII.  No further Counts remain.


DATE:  <u>10/19/2009</u>            <u>      /s/                        </u>

                                    J. Frederick Motz

                                    United States District Judge